UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>v.<br><br>EVA C. JEONG, ET AL.,<br><br>    Defendants. | Case No. 4:21-cv-02362-YGR<br><br>ORDER TO SHOW CAUSE RE: ARTICLE III STANDING; SUPPLEMENTAL JURISDICTION |

Plaintiff Brian Whitaker has sued for alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* (the "Unruh Act"). This case was reassigned to the undersigned after Magistrate Judge Sallie Kim issued a Report and Recommendation ("Report," Dkt. No. 29) in favor of default judgment.

Having considered the Report and pleadings in this action, the Court is concerned that plaintiff has not sufficiently alleged standing for his ADA claim to support the issuance of default judgment. Additionally, exceptional circumstances appear to support declining supplemental jurisdiction over the Unruh Act claim. Accordingly, plaintiff is **HEREBY ORDERED TO SHOW CAUSE** in writing **by no later than October 7, 2022**, why he has standing and why the Court should continue to exercise supplemental jurisdiction over the Unruh Act claim.

The Court assumes plaintiff's familiarity with the allegations in his complaint. To have Article III standing, plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). An injury in fact must be "particularized," and it must be "concrete." *Id*. at 340.[1] Notably,

---

[1] "Particularized" injuries "affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Concrete injuries are "physical, monetary, or cognizable

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC*, 141 S. Ct. at 2205 (citation omitted). "[A]n injury in law is not an injury in fact." *Id*. at 2205. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 2208.

In order to obtain injunctive relief under the ADA, plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (en banc). Plaintiff "lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." *Id.* at 953. Under controlling Ninth Circuit law, a plaintiff can satisfy this requirement in one of two ways. First, a plaintiff satisfies the requirement by showing an "inten[tion] to return to a noncompliant place of public accommodation where [the plaintiff] will likely suffer repeated injury." *Id*. Second, the standing requirement is satisfied when a plaintiff is "deterred from visiting a noncompliant public accommodation" because of previously-encountered barriers related to the disability. *Id*. at 949. Thus, ADA plaintiffs can demonstrate standing "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Id*. at 944.[2]

This Court has previously dismissed cases by plaintiff based upon admissions that he had no plan to return to the hundreds of establishments that he has filed suit against in this District.

---

intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021). Intangible harms must satisfy the "close relationship" analysis, in which the "inquiry [is] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 2204. "Those include, for example, reputational harms, disclosure of private information, intrusion upon seclusion . . . [and] harms specified by the Constitution itself." *Id*.

[2] The Court notes that the viability of tester standing has been questioned following *TransUnion*. Several circuit courts have analyzed the impact of *TransUnion* on ADA claims demonstrating that a nuanced analysis may be required. *See, e.g.*, *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022); *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022); *Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022). The Ninth Circuit has not yet analyzed ADA standing in light of *TransUnion*.

*See Whitaker v. Salah*, No. 21-cv-09548, (N.D. Cal. June 27, 2022), ECF No. 35. Similar concerns are implicated here, where the record shows plaintiff failed to diligently prosecute this case and reuses the same boilerplate complaint. As this Court has explained before, pleading is appropriately governed by the plausibility standard where formulaic recitations of jurisdictional allegations are insufficient. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (applying plausibility standard to subject matter jurisdiction); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) has changed the legal landscape for standing for statutory violations. Prior to *TransUnion*, courts would take a "broad view" of standing in civil rights complaints enforcing statutory violations. *Chapman*, 631 F.3d at 954; *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972). However, *TransUnion*, which roots the standing analysis in separation of powers, casts doubt on the proposition that any special pleading requirement applies to civil rights cases premised upon statutory violations. Plausibility controls.

Existing case law is instructive for what plaintiff may be able to add to satisfy a plausibility standard. For instance, in *Doran v. 7-Eleven, Inc.*, the plaintiff visited the store on "ten to twenty prior occasions," it was near his favorite restaurant in the city, and he planned to take annual trips to the city. 524 F.3d 1034, 1040 (9th Cir. 2008). In *Pickern v. Holiday Quality Foods Inc.*, the plaintiff preferred the defendant's market chain over others. 293 F.3d 1133, 1138 (9th Cir. 2002). Such factual allegations are in plaintiff's possession and control and may tip the scale from conceivable to plausible for purposes of the standing inquiry, consistent with Rule 11 obligations. Here, the complaint is filed with conclusory recitations of the standing elements, with no factual enhancement to support any intent to return, on any theory. Any default judgment would be void for lack of subject matter jurisdiction.

At this juncture, plaintiff must demonstrate why his complaint should not be dismissed with leave to amend and the motion for default judgment denied as moot. Failure to timely file a response to this order to show cause will be construed as a concession that plaintiff does not have standing and that dismissal of the entire action is appropriate.

In addition, plaintiff is **HEREBY ORDERED TO SHOW CAUSE** why the Court should not

1  decline supplemental jurisdiction over the Unruh Act claim.  A federal court may decline to
2  exercise supplemental jurisdiction over a state law claim "in exceptional circumstances."  28
3  U.S.C. § 1367(c)(4).  Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's
4  right."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  When a "high-
5  frequency" litigant such as plaintiff in this case asserts an Unruh Act claim in federal court with an
6  ADA claim, this constitutes an exceptional circumstance that justifies dismissal of the Unruh Act
7  claim.  *See, e.g.*, *Arroyo v. Rosas*, 19 F.4th 1202, 1211-14 (9th Cir. 2021); *Vo v. Choi*, No.
8  20-55737, -- F.4th --, 2022 WL 4362289 (9th Cir. Sept. 21, 2022); *Garcia v. Maciel*, No. 21-
9  cv-03743-JC, 2022 WL 395316 (N.D. Cal. Feb. 9, 2022).  There is no doubt that plaintiff in this
10 case views these lawsuits as a mission-based business that seeks to avoid California's heightened
11 pleading standards and cash settlements.[3]  Indeed, the record shows that plaintiff failed to
12 prosecute this case and filed the pending motion for default judgment while two orders to show
13 cause based upon his lack of prosecution were pending.  Having balanced the interests in federal-
14 state comity, convenience, fairness, and judicial economy at this early juncture of the litigation,
15 the Court finds that exceptional circumstances appear to exist that justify declining jurisdiction
16 over the Unruh Act claim.

17    Accordingly, plaintiff must explain in writing why the Court should not decline
18 supplemental jurisdiction.  Failure to respond to this order to show cause will be construed as a
19 concession that exceptional circumstances support declining supplemental jurisdiction.

20    **IT IS SO ORDERED.**
21 Dated: September 29, 2022

                                              _____
                                              **YVONNE GONZALEZ ROGERS**
                                              **UNITED STATES DISTRICT JUDGE**

---

[3] Under the Unruh Act, plaintiffs are entitled to $4,000 in statutory damages plus attorneys' fees.  Accordingly, from a business perspective, assuming a base payment of $4,000, the filing of 100 cases yields $400,000 and 1000 cases yields $4,000,000.